**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:21-cv-20652-KMM

NORMA VIRGEN ESCALONA,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Norma Virgen Escalona's Motion for Summary Judgment (ECF No. 27) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 30). Plaintiff filed a Response to Defendant's Motion for Summary Judgement (ECF No. 31), which also included a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment.[2] The undersigned has fully considered the Motions, the record, and is otherwise duly advised in the matter, and hereby recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Motion for Summary Judgment be **DENIED**.

---

[1] Plaintiff initiated this suit against then Acting Commissioner Andrew Saul. Kilolo Kijakazi replaced Andrew Saul as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."

[2] The Honorable K. Michael Moore, United States District Judge, referred the Motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 2).

## I.    PROCEDURAL BACKGROUND

This case involves an application for Social Security disability insurance benefits under the Social Security Act ("Act") (42 U.S.C. § 401, *et seq*).  On August 10, 2016, Plaintiff applied for Social Security disability insurance benefits and supplemental security income under Title II of the Act, alleging depression, kidney disease, cervical disc disease, panic attacks, hernia, digestive disorder, and phobias. (R. 107-08; 137–38; 157; 416–23; 441);[3] (ECF No. 27 at 1–2).  Plaintiff alleges the disability onset date to be December 31, 2017.[4]  (R. 42).

Plaintiff's claim was initially denied on November 28, 2016.  (R. 25).  Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A hearing took place on August 28, 2018, before ALJ James Cole Cartledge.  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with additional nonexertional limitations.  (R. 188).  As a result, the ALJ concluded that Plaintiff was not disabled and could perform her past work as a small parts assembler.  Plaintiff sought a review of the ALJ's decision by the Appeals Council.  The Appeals Council vacated the ALJ's decision on January 31, 2020, citing inconsistencies between the ALJ's RFC finding and State Agency Consultant Dr. James Levasseur's assessment.  (R. 194).  The Appeals Council instructed the ALJ to (1) give additional consideration to the Plaintiff's residual functional capacity ("RFC"), (2) provide appropriate rationale with specific references to evidence in support of the assessed limitations, and (3) further

---

[3] Citations to the Certified Administrative Record (ECF No. 20) are indicated by "R" followed by the Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).
[4] On May 4, 2020, the onset date was amended to December 31, 2017.  Plaintiff avers that "reflects a strategic decision made in an attempt to simplify the claim in light of additional worsening, not a representation of non-disability prior to the new date." (R. 441) (Plaintiff amended her onset date "to advance my case and improve the chances for a fully favorable decision").

evaluate Dr. Levasseur's opinion, pursuant to C.F.R. §§ 404.1527, 416.927, explaining the weight given to this opinion evidence.

On July 20, 2020, ALJ Cartledge held a remand hearing and again issued an unfavorable decision. The ALJ found Plaintiff had severe, non-listing level impairments of spine disorder, osteoarthritis, obesity, anxiety and obsessive compulsive disorders, depression and bipolar related disorders. (R. 28–29). The ALJ also found that Plaintiff had moderate limitations relating to her mental impairments. (R. 30–31). The ALJ concluded that Plaintiff could perform her past work as a small parts assembler, both "as actually and generally performed," and that she was not disabled. (R. 30–31; 40). Plaintiff sought review from the Appeals Council, which subsequently denied her request on December 15, 2020. (R. 1–8; 339–41; 517–18).

Under 42 U.S.C. § 405(g), Plaintiff exhausted all forms of administrative review and filed the instant action before the Court. Plaintiff and Defendant both filed Motions for Summary Judgment, which are now ripe for review.

## II.   THE RECORD

### a.   Summary of the Administrative Law Judge's Decision

After reviewing the record and conducting a hearing following remand, the ALJ again determined that Plaintiff was not disabled within the meaning of the Act. In the written decision, the ALJ conducted the required five-step sequential evaluation. In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2017, which is the amended offset date. (R. 28). In step two, the ALJ found that Plaintiff had the following severe impairments: "spine disorder; osteoarthritis; obesity; anxiety and obsessive compulsive disorders; and depression, bipolar, and related disorders (20 C[.]F[.]R[.] [§] 404.1520(c) and 416.920(c))."

(*Id.*).  The ALJ found these medically determinable impairments to significantly limit Plaintiff's ability to perform work activities as required by SSR 85-28.

In addition to the severe impairments listed in step two, the ALJ also found evidence of non-severe impairments that resulted in no more than a minimal effect on Plaintiff's ability to meet the basic demands of work activities.  (R. 29).  These non-severe impairments included diabetes mellitus, other disorders of the gastrointestinal system, and hyperlipidemia.  (*Id.*).

The ALJ continued on to step three, determining that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §[§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (*Id.*).  In step four, the ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 C[.]F[.]R[.] [§§] 404.1567(b) and 416.967(b) except the claimant can only occasionally (occasionally being defined as cumulatively 1/3 or less of an 8-hour workday) lift and/or carry (including upward pulling) 20 pounds; frequently (frequently being defined as cumulatively between 1/3 and 2/3 of an 8-hour workday) lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday; with no limits regarding pushing and/or pulling (including operation of hand and/or foot controls), except as otherwise shown for lift and/or carry in this residual functional capacity."  (R. 31).

The ALJ further found that the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; frequently stoop (i.e., bending at the waste); frequently kneel; frequently crouch (i.e., bending at the knees); and frequently crawl.  (R. 32).  The claimant must avoid concentrated exposure to wetness and hazards (e.g. machinery,

heights, etc.).  (*Id.*).  The claimant was limited to unskilled Specific Vocational Preparation levels 1 and 2 and General Educational Development levels 1 and 2 occupations of simple, routine, and repetitive tasks.  (*Id.*).  She is limited to occasional interaction with the public, co-workers, and supervisors, and limited to occasional work-setting changes.

As part of step four, the ALJ considered Plaintiff's subjective complaints but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 31).  The ALJ considered the treatment notes from Community Medical Group and Dr. Hector Meruelo, State Agency Medical Consultant, and found that the light residual functional capacity with postural and environmental restrictions more than adequately accounted for the claimant's spine disorder and osteoarthritis.  (R. 35).

The ALJ also considered the opinion of Dr. Rosa Fernandez Turner contained within medical notes and questionnaires, which the ALJ accorded little weight because it was inconsistent with Plaintiff's treatment history and based on "claimant's self-reports of disability."  (R. 39). The ALJ also found Dr. Turner's findings and opinions inconsistent with the remainder of the evidence, including the consultative report by Dr. Lourdes Pola, PhD, who conducted a psychological evaluation; and treatment notes from Community Medical Group.  (R. 39).

The ALJ accorded "great weight" to the opinions of the non-examining and non-treating State Agency psychological consultant, Barbara Lewis, PhD, and medical consultant, Minal Krishnamurthy, MD, on reconsideration because their opinions were consistent with the overall evidence of record at the time in which they were offered and consistent with subsequently received evidence.  (Exhibits 12F; 17F); *see* (R. 38).  In compliance with the Appeals Council's

5

remand, the ALJ also averred to have evaluated Dr. Levasseur's opinion on Plaintiff's psychological condition and gave Dr. Levasseur's opinion little weight. (*Id.*).

The ALJ did not proceed to step five. The ALJ ultimately determined that Plaintiff was capable of performing her past relevant work as a small parts assembler, and that Plaintiff has not been under a disability from the alleged onset date. (R. 40).

## III.   STANDARD OF REVIEW

### a.   Legal Principles

After an ALJ issues a decision and the claimant exhausts all tools of administrative review, the claimant may seek review of the decision by commencing a civil action in federal court. The court is tasked with only deciding whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Davis v. Kijakazi*, 2022 WL 1215634, at *1 (N.D. Ala. Apr. 25, 2022) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020)).

### b.   Regulatory Framework

The Social Security Administration formulated a framework of detailed regulations that are used in the SSA's review process. This framework begins by determining whether a claimant is disabled. A claimant must be "disabled" to be eligible for Social Security benefits. 42 U.S.C. § 1382. The claimant must prove he or she is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Code of Federal Regulations outlines a five-step sequential evaluation process for deciding whether a claimant is disabled.  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaged in any substantial gainful activity, she will be found not disabled.

In the second step, the ALJ must then determine whether she has a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled.  20 C.F.R. § 1520(c).  If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three.  *Mabry v. Saul*, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P. App. 1.  Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the claimant's residual functional capacity and (2) the claimant's ability to perform her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f).  If the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing his past relevant work.   If the claimant can still perform his past relevant work, then she will not be found disabled.  *Id.*

In step five, the burden shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). If met, the "burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]." *Id.* The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work. If the claimant can make an adjustment to other work that exists in the national economy, then she is not disabled. If not, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

In determining the claimant's RFC, the ALJ evaluates every medical opinion received and assigns it a particular amount of weight. *See* § 404.1527(c). The ALJ generally grants more weight to a medical opinion the longer a medical provider has treated a claimant and the more knowledge that the provider has about a claimant's impairment. 20 C.F.R. § 404.1527(c)(2)(i), (ii). The ALJ assigns more weight to a provider's opinion based on the amount of "relevant evidence" provided to support it, as well as the strength of her explanation. *Id*. § 404.1527(c)(3). The ALJ reserves certain administrative findings for her own determination, and thus a provider's opinions that a claimant is disabled and that the claimant's impairment is severe enough to meet one of the listed impairments are not due special significance. *Id.* § 404.1527(d).

In 2017, the SSA revised its medical evidence rules. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). For applications filed prior to March 27, 2017, as is the case here, the ALJ is required to evaluate every medical opinion received. *See* 20 C.F.R. § 416.927(c). Under the regulations applicable to claims

8

filed before March 27, 2017, the ALJ is required to give "controlling weight" to a treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Eleventh Circuit caselaw is clear on the issue that a treating physician's conclusions must be given substantial or considerable weight, unless the ALJ clearly articulates good cause for discrediting that opinion. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 861 (11th Cir. 2019) (internal quotation marks and citations omitted).

When the ALJ articulates specific reasons for failing to give the opinion of a treating provider controlling weight, and those reasons are supported by substantial evidence, the court should not reverse the Commissioner's decision. *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2015)); s*ee also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("When the administrative law judge's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error."). Furthermore, "[t]o the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter*, 609 F. App'x at 558.

## IV.     ANALYSIS

Plaintiff first argues that the ALJ's rationale for according little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Turner, is not supported by substantial evidence. Next, Plaintiff argues that the ALJ's rationale for rejecting Plaintiff's testimony is not supported by

substantial evidence.  Lastly, Plaintiff argues that the ALJ's determination in step four that Plaintiff can return to her past relevant work as a small parts assembler is not based on substantial evidence. For the reasons below, a remand is appropriate.

### a.   The ALJ Erroneously Accorded Plaintiff's Treating Physician Little Weight

Plaintiff contends that the ALJ erred in affording Dr. Turner's opinions little weight based on reasoning unsupported by substantial evidence.  Absent good cause, an ALJ is to give the medical opinions of treating sources substantial or considerable weight.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  While an ALJ may choose to reject a treating physician's findings when there is good cause, he must clearly articulate the reasons for doing so. *Id.*  (internal quotation marks and citations omitted).  Here, the ALJ's decision to discount the opinions of Plaintiff's treating psychiatrist, Dr. Turner, is not supported by good cause. Accordingly, this error necessitates a remand.

In support, Plaintiff makes three arguments: (1) Dr. Turner's findings are supported by her progress notes; (2) Dr. Turner prescribed medications and explained the course of Plaintiff's treatment, contrary to the ALJ's findings; and (3) the other evidence of record is not inconsistent with Dr. Turner's opinion.  (ECF No. 27 at 1).  Defendant argues that the ALJ's consideration of the evidence proffered is consistent with the regulations and supported by substantial evidence. (ECF No. 30 at 5).

#### i.   Dr. Turner's Findings and Progress Notes

The ALJ decision states that Dr. Turner's medical opinions are based on Plaintiff's "self-reports of disability" rather than Dr. Turner's own medical diagnoses and opinions.  (R. 39).  In response, Plaintiff contends that Dr. Turner diagnosed Plaintiff's condition based on her expertise as a psychiatrist and did not simply rely on Plaintiff's self-reporting.  (ECF No. 27 at 10).

Defendant argues that this is inaccurate because the notes primarily recounted Plaintiff's reported symptoms rather than Dr. Turner's observations.

In support, the ALJ noted that Dr. Turner recorded Plaintiff's claims that she was severely depressed, anxious, in a severe state of mind, and hearing voices.  (R. 39.).  The ALJ found that Dr. Turner failed to opine on Plaintiff's symptoms and merely recorded what Plaintiff reported. (*Id.*).  However, the record does not support the ALJ's findings.

In determining the weight that should be afforded to Dr. Turner's opinions, the ALJ was required to consider that Dr. Turner had a consistent and long-lasting treating relationship with Plaintiff, that Dr. Turner's opinions were supported by consistent mental status examinations and treatment notes over the course of several years, and Dr. Turner's specialization as a psychiatrist. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).  As explained in Section iii below, the ALJ was permitted to discount Dr. Turner's opinions if he found they were not well-supported by medical evidence or inconsistent with the record as a whole, which was not the case here. *See* 20 C.F.R. §§ 404.1527(d)(1)–(2), 416.927(d)(1)–(2); SSR 96-6p, 1996 WL 374180; SSR 96-2p, 1996 WL 374188; *Anderson v. Comm'r of Soc. Sec.*, No. 2:17-CV-220-FTM-CM, 2018 WL 4026307, at *3 (M.D. Fla. Aug. 23, 2018).

The findings of Mental Health specialists, including psychiatrists like Dr. Turner, rely upon subjective self-reporting information.  *See Matthews v. Barnhart*, 347 F. Supp. 2d 1093, 1101 (M.D. Ala. 2003) ("Clinical psychologists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment.").  *See Davis v. Colvin*, No. 1:15-CV-0366-JFK, 2016 WL 4506782, at *5 (N.D. Ga. Aug. 29, 2016) (reversing ALJ's decision to give little weight to a consultative psychologist due to psychologist's "alleged over-reliance on Plaintiff's self-reports").

11

> This remarkable conclusion is made possible only by the ALJ's tacit equation of the [psychiatrist's] findings with plaintiff's subjective complaints, as if the former merely parroted the latter without any medical judgment/assessment intervening. This unstated assumption is unwarranted as a professional medical matter and unsupported by any unique facts specific to this case.

*Stephens v. Apfel*, 134 F.3d 383, 1998 WL 42524 (10th Cir. 1998).

The Court agrees with Plaintiff that there is nothing in the record to suggest Dr. Turner did not exercise professional and interpretive judgment in her findings regarding Plaintiff's symptoms, conditions, and severity thereof. Dr. Turner's extensive treatment of Plaintiff's symptoms spans at least 23 sessions over the course of five years. (R. 633–37, 690–705). Within that time frame, Dr. Turner extensively documented and diagnosed Plaintiff's conditions. Dr. Turner made diagnoses and findings that Plaintiff was "unable to coordinate her thoughts" (R. 692); "unable to work at any level" and "unable to . . . ever function at a normal rate" (R. 690); demonstrated poor hygiene and poor eye contact (R. 692); "unable to focus, concentrate or process information" (*Id.*); unable to maintain a conversation, and at times made no sense (*Id.*); depressed and had been seen speaking to a deceased family member (*Id.*); unable to control severe and negative racing thoughts (*Id.*); displayed a "bizarre mood," refused to talk, and again had poor eye contact and wanted to go home (R. 692); "depressed with paranoia at times" (*Id.*); "withdrawn with severe unrealistic thoughts" (R. 690); and had no will to live (*Id.*). *See generally* (R. 633–37, 690–705).

Dr. Turner listed Plaintiff's diagnoses as Major Depression, Recurrent, Severe with Psychotic Features and Anxiety with Panic Attacks. (R. 674). Dr. Turner opined that Plaintiff's prognosis was guarded and severe. (*Id.*) Despite treatment for years, Dr. Turner opined that Plaintiff's condition was deteriorating. (*Id.*) Dr. Turner opined that "[Plaintiff] has been in a severe chronic and severe nonfunctional [state] for a few years now" and that Plaintiff was mentally disabled permanently. (R. 678). Dr. Turner regularly noted Plaintiff's severe conditions

12

and limitations in the areas of understanding, interacting with others, concentrating, and managing oneself.  (R. 664–66).

Dr. Turner's opinions were supported in detail by her own observations, in addition to Plaintiff's reported symptoms.  Accordingly, the ALJ's "self-reporting" rationale does not demonstrate good cause for discounting Dr. Turner's findings and is not supported by substantial evidence.

ii.   The ALJ Mischaracterizes Plaintiff's Treatment

Plaintiff argues that the ALJ's finding that Dr. Turner failed to properly evaluate and treat Plaintiff's mental impairments is without basis.  On one occasion when Plaintiff reported hearing voices, the ALJ argues that Dr. Turner did not evaluate this condition or discuss "whether the claimant needs medication to address it, how the condition may have emerged when the claimant was in her 60s, or how this condition would prevent the claimant from doing simple, routine, repetitive tasks like her previous work (Exhibit 11F)."  (R. 39).  However, a reading of Plaintiff's treatment notes indicated that Dr. Turner diagnosed Plaintiff with "Major Depression, Recurrent, Severe, with Psychotic Features" and, Dr. Turner prescribed medications, including sertraline, temazepam, clonazepam, and Seroquel to treat the aforementioned diagnoses, including Plaintiff's depression, psychotic features, and panic attacks.  (R. 84, 85–86, 639, 674, 676).  The record also reflects that Dr. Turner opined that Plaintiff's mental condition has "been present since early adulthood" and her mental illness "only gets worse with age and life circumstances."  (ECF No. 27 at 12); (R. 678).  Plaintiff testified that her condition worsened in March 2015 when her daughter was incarcerated; however, Plaintiff was emotionally unable to discuss the circumstances at the hearing.  (R. 90, 93).

As to the ALJ's inquiry for how Plaintiff's symptoms may have emerged in her 60s, Plaintiff argues that individuals like herself can develop and suffer from severe mental illness in their sixties and as they get older.  In *Simon*, the plaintiff was sixty-two years old and had developed mental impairments after he stopped working, which included an inability to focus, memory problems, and depression, which caused him to isolate himself.  7 F.4th at 1108.  As Dr. Turner also explained, Plaintiff's mental impairments have been present since early adulthood; however, they have only gotten worse "with age and life circumstances."  (R. 678).

The ALJ also discredits Dr. Turner's course of treatment for Plaintiff.  In particular, the ALJ argues that "[i]t seems that if the claimant's mental condition were as severe as indicated by Dr. Turner, the claimant would have required a more aggressive type of treatment such as inpatient care or even counseling." (R. 39).  However, Dr. Turner opined that based on Plaintiff's five years of treatment, the only treatment available consisted of medication to keep her somewhat stable because Dr. Turner found that Plaintiff was "unable to focus, concentrate, memorize or make any decisions."  (R. 688).  More specifically, Dr. Turner opined that these symptoms are due to Plaintiff's "mental disorders which impairs the most vital necessary neurotransmitters in the brain."  (*Id.*).  Thus, Dr. Turner supports her conclusion that only medication can effectively maintain Plaintiff's stability.

To the extent that the ALJ discredited Dr. Turner on his *own* opinion that more aggressive treatment would be required to treat Plaintiff's symptoms, that would be error.  The Eleventh Circuit emphasized that "it is generally improper for an ALJ to substitute his own judgment for that of a medical expert because, among other reasons, ALJs are not medical experts." *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 353 (11th Cir. 2018) (citations omitted).

The ALJ also found that Plaintiff's mental impairment was noted as "controlled" with treatment in February 2020.  (R. 39).  In response, Plaintiff argues that Dr. Turner actually noted that Plaintiff's condition was uncontrolled because Plaintiff was unable to focus, and "[t]he only treatment available is medication to keep [Plaintiff's impairments] at least somewhat stable."  (R. 688).  Like *Simon*, the Plaintiff here demonstrated fluctuations in her symptoms.  7 F.4th at 1106. As the Eleventh Circuit held in that case:

> It was also error to conclude that Dr. Turner's occasional references to Simon being "stable on medication" were inconsistent with a finding of debilitating mental illness. Many mental disorders—and bipolar disorder in particular—are characterized by the unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.")

*Id.*  The Court acknowledged that individuals, like Plaintiff, who suffer from such disorders "can experience good and bad days."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019).  Relegating Plaintiff's symptoms to a brief snapshot of any single moment says little about Plaintiff's conditions, and "an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a fundamental, but regrettably all-too-common, misunderstanding of mental illness."  *Simon*, 7. F.4th at 1106.

Moreover, the February 2020 medical note cited by the ALJ is derived from the opinion of an advanced registered nurse practitioner providing generalized treatment to Plaintiff at her yearly exam.  (R. 821) ("I am here for my yearly exam.").  The medical provider for this examination was not a psychiatrist or someone qualified to render a final opinion on Plaintiff's mental impairments, such as Dr. Turner, thus, the 2020 medical note is not substantial evidence.

15

The ALJ concludes that Dr. Levasseur's opinion is given little weight because Dr. Levasseur's opinion relies heavily on Dr. Turner's treatment notes, which the ALJ describes as "significantly out of proportion with the other evidence of record."  (R. 38).  However, such a blanket assertion made without articulating specific reasons or pieces of evidence is not substantial evidence showing good cause to discredit Dr. Turner or Dr. Levasseur's opinions.  As mentioned below, the Court will explore the alleged inconsistencies between Dr. Turner's opinions and the medical records.  Accordingly, the ALJ does not demonstrate, with substantial evidence, good cause for discounting Dr. Turner's treatment of Plaintiff.

### iii.   Additional Inconsistencies in Dr. Turner's Opinions

Lastly, Plaintiff argues that the ALJ's noted inconsistencies between Dr. Turner's opinions and the medical records are inaccurate.  Specifically, the ALJ claimed that Dr. Turner's opinions are inconsistent with the remainder of the evidence "including the consultative report by Dr. Pola and treatment notes from Community Medical Group, as well as testimony at the hearing."  (R. 39).

"[C]ontrolling weight" is given to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2) (emphasis added).  The correct standard is not whether the medical evidence is consistent with Dr. Turner's opinion; rather, the standard is whether Dr. Turner's opinion is "not inconsistent."  As stated in SSR-96-2P, the term "not inconsistent" is applied to a well-supporting treating source that "need not be supported directly by all of the other evidence" as long as other substantial evidence does not contradict the opinion.  Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A. 1996).

16

Here, Dr. Turner's opinion was not inconsistent with the other medical evidence or testimony. The ALJ compared Dr. Turner's medical opinions from 2016 with Dr. Pola's medical opinions from her November 15, 2016 consultation, noting a "sharp contrast." (R. 36). The ALJ cited Dr. Pola's evaluation, which noted that Plaintiff was independent in her daily living skills and that Plaintiff made light meals, dusted, made the bed, and watched television. (R. 36). The ALJ also noted that Plaintiff had one friend who she called regularly; she visited her daughter and granddaughter regularly; and she sometimes went to the mall. (*Id.*). Citing *Simon*, Plaintiff argues that the Eleventh Circuit rejected the contention that a claimant feeding herself, dressing, and shopping was significant and truly indicative of an inconsistency. 7 F.4th at 1108.

> [T]he ALJ failed to identify any genuine inconsistency with Dr. Turner's findings. In our view, it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis.

*Id.* at 1108. Plaintiff asserts that Dr. Pola's 2016 findings are not as "drastically inconsistent" with Dr. Turner's treatment notes as the ALJ claims. (R. 36).

At the consultative examination, Dr. Pola also noted that Plaintiff was appropriately dressed and groomed with appropriate eye contact, coherent speech displaying no loosening of associated ideas, and concrete but goal directed thoughts except when discussing medical problems. Dr. Pola reported Plaintiff's mood to be lethargic and her affect "mildly depressed." (R. 37). Defendant further asserts that Dr. Pola noted Plaintiff to be cooperative with no signs of bizarre behavior. Considering all of these "inconsistencies" as the ALJ describes them, Dr. Pola diagnosed Plaintiff with Major Depressive Disorder, Recurrent Moderate and Panic Disorder—all of which underly Plaintiff's mental impairments and are consistent with Dr. Turner's medical

findings.  (R. 654); *see* (R. 674).  Dr. Pola also acknowledged that "[Plaintiff] is being treated by Dr. Fernandez Turner and takes . . . medications."  (R. 650).

Plaintiff also avers that Dr. Levasseur reviewed the evidence in February 2017 and had the benefit of reviewing both Dr. Pola's and Dr. Turner's findings back to 2013 "which show[ed] persistent severe anxiety and depression with marginal response to medication."  (R. 147).  Dr. Levasseur opined that Plaintiff had marked limitations in her ability to maintain attention and perform within a schedule without psychological symptoms interrupting.  Dr. Levasseur did not find Dr. Pola's findings inconsistent with Dr. Turner's findings.

Lastly, Plaintiff counters the ALJ's conclusion that Dr. Turner's findings are also inconsistent with medical records from Community Medical Group.  The ALJ's decision stated that medical notes from Community Medical Group showed an "individual whose mood and affect were assessed as normal" and that Plaintiff responded appropriately to questions.  (R. 39).  The ALJ's decision also found that aside from notes indicating a sad or anxious mood, there is no evidence to suggest "significant psychiatric related abnormalities."  (*Id.*).

Plaintiff also argues that just because she can carry out basic physical and mental functions does not mean she cannot experience symptoms of her severe mental impairments.  (ECF No. 27 at 15).  These two concepts are not mutually exclusive.

The Court looks to *Simon*, which involved a Plaintiff with similar conditions and symptoms.  In *Simon*, the Eleventh Circuit held that before an ALJ rejects a treating physician's opinion as inconsistent, the ALJ must identify a genuine inconsistency.  *See Simon*, 7 F.4th 1107.  Simon also suffered from many mental disorders, including bipolar disorder, which the ALJ listed as a severe impairment for the Plaintiff in this case.  (R. 28).  As the court held, generalized statements that the claimant was cooperative, exhibited organized speech and relevant thought

18

content, or that she showed fair insight and instant cognition "will not be an adequate basis to reject a treating physician's opinions." *Simon*, 7 F.4th 1107.  The court then found that because the claimant in that case could communicate, maintain eye contact, and follow simple instructions during a mental status examination does not have a bearing on claimant's mood, panic attacks, outbursts of anger, or fear of leaving home. *Id.*  Similar to *Simon*, the Plaintiff here could carry out the same independent tasks and communicate effectively, while still experiencing severe mental impairments.  "[I]t goes without saying" that individuals suffering from severe mental illness are capable of carrying out basic activities, such as eating, putting clothes on, and shopping. *Id.* at 1108.  However, none of these activities as pointed out by the ALJ account for the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace or home setting where external factors may affect Plaintiff's conditions. *Id.* at 1107.

The conclusion here is nearly identical to *Simon*: "[i]n this case, we cannot discern—and the ALJ did not attempt to explain—how any of [Dr. Pola's] findings [and the medical evidence] are genuinely inconsistent with Dr. Turner's opinions." *Id.*  Accordingly, good cause is not shown and the ALJ's rationale for affording little weight to Dr. Turner's medical opinions is not supported by substantial evidence, warranting remand for reevaluation.

### b. The ALJ Erred by Rejecting Plaintiff's Testimony

When a plaintiff attempts to prove disability based on subjective complaints, she must provide evidence of an underlying medical condition and offer either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002).  If the objective medical evidence does not

19

confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id.*

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). If such reasons are not given, then the claimant's subjective pain testimony must be accepted as true. *Id.* at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

Defendant claims to articulate two reasons for not crediting Plaintiff's testimony. First, Defendant argues that the ALJ came to the conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not entirely consistent with the medical evidence . . . for the reasons explained in this decision." (R. 37). Defendant argues that the ALJ found that Plaintiff's disabling symptoms and limitations were inconsistent with the objective evidence. (ECF No. 30 at 13); *see* (R. 33). For example, the ALJ noted that Plaintiff sought routine and basic care through her general practitioner with intermittent osteoarthritic complaints that appear to wax and wane. (ECF No. 30 at 13). Defendant also argues that the ALJ found Plaintiff's allegations of a disabling mental impairment unsupported by evidence. (ECF No. 30 at 13). Defendant asserts that the evidence showed that Plaintiff's mental conditions were stable. For these reasons, the ALJ suggests discounting Plaintiff's testimony.

In its Reply, Plaintiff contends that the ALJ's aforementioned analysis falls short of articulating explicit reasons for discounting Plaintiff's testimony. The undersigned agrees.

Plaintiff first points out that she sought routine and basic care through Community Medical Group because that is what a general practitioner provides.  Plaintiff also criticizes Defendant's argument that Plaintiff's limitations appear to wax and wane.  Because symptoms of a physical or mental impairment do not appear frequently does not mean such impairments are false and should be rejected.  Unlike a physical impairment, it is difficult to predict the course of mental illness.  Symptom-free intervals, though sometimes indicative of remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse.  *Wallace v. Barnhart*, 256 F. Supp. 2d 1360, 1376 (S.D. Fla. 2003) (quoting *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986)).  Plaintiff also counters Defendant's argument that Plaintiff's mental conditions were stable on medication or improved.  As noted above in *Wallace*, such an observation is not dispositive on issues of mental impairment.  The ALJ also claims that Plaintiff's symptoms are not consistent with evidence "for the reasons explained in this decision."  This is not an "explicit and adequate reason," nor does it provide any detail besides generally pointing to the other arguments surrounding inconsistencies, which the Court has found to not be genuine.  *Foote*, 67 F.3d at 1561–62.  Accordingly, the ALJ failed to articulate specific reasons as to why Plaintiff's subjective testimony should be discounted, thus, substantial evidence does not support the ALJ's decision to discredit Plaintiff's testimony.

> ### c.  The ALJ's Finding that Plaintiff Can Return to Her Past Relevant Work Was Supported by Substantial Evidence

As part of step four, Plaintiff argues that the ALJ's RFC application cannot be sustained because it failed to address the full extent of Plaintiff's mental impairments, and the ALJ failed to

include any reference to machinery hazards when questioning the VE.  (ECF No. 27 at 18).[5]  In response, Defendant argues that the ALJ's hypothetical questions to the vocational Expert ("VE") encompassed all the limitations the ALJ ultimately included in Plaintiff's RFC assessment.  (R. 31–32, 63).  Defendant asserts that the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a small parts assembler as actually and generally performed, and it was not an error for the ALJ to rely on the VE's opinion.

To the extent either that the Court rejects the above recommendation that this matter should be remanded for failure to accord proper weight to Dr. Turner; or, upon remand, the ALJ reaches again reaches step four in the analysis, I have considered this argument for remand and find no error in the ALJ's decision in this respect.  On remand and to the extent that the ALJ appropriately establishes Plaintiff's RFC under the first prong of step four and reaches the second prong determining whether Plaintiff can return to her past relevant work as a small parts assembler, I find that the ALJ did not err by omitting mention of specific hazards in his hypothetical question to the VE.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The ALJ posed a hypothetical question to the VE that assumed:

> a hypothetical individual of the same age, education and experience as the Claimant. Assume they're limited to light work in accordance with the Regulations. Which can occasionally climb ladders, ropes and scaffolds. Occasionally balance. Frequently stoop, frequently kneel, frequently crouch, frequently crawl. They have to avoid concentrated exposure to wetness and to hazards. That's limited to SVP levels of 1 and 2, and GED levels 1 and 2 occupations of simple, routine, and repetitive task [sic]. Limited to frequent interaction with the public, coworkers, and supervisors. Limited to frequent work setting changes.

---

[5] Plaintiff primarily challenges the ALJ's decision on RFC on the basis that he improperly discounted Dr. Turner's opinion, thereby reaching a flawed determination with respect to her limitations.  This challenge is raised in the alternative, even assuming no error in the ALJ's decision with respect to Dr. Turner.

(R. 63).  The ALJ's RFC assessment below included a limitation to avoid "concentrated exposure to . . . hazards (e.g., machinery, heights, etc.)."

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant . . . must avoid concentrated exposure to wetness and hazards (*e.g.* machinery, heights, etc.).

*See* (R. 32) (emphasis added).  As seen above, the ALJ's hypothetical question included "concentrated exposure to . . . hazards," but did not include "(e.g. machinery, heights, etc.)" following "hazards."  *Compare* (R. 32) *with* (R. 63).

Plaintiff contends that this was harmful error.  Defendant argues that this argument is misplaced because Plaintiff provides no evidence to suggest that the VE did not assume "hazards" to mean all hazards, including those involving moving mechanical parts and machinery.  (ECF No. 30 at 14).  Defendant further asserts that even if the VE did not consider the hazard in the context of machinery, the error would be harmless given that the small parts assembler job did not require exposure to moving mechanical parts.

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments.  *Winschel*, 631 F.3d 1176 at 1180 (citations omitted).  Plaintiff cites *Lapica* for the proposition that an ALJ erred by not expressly asking the VE to assume a limitation; however, that case is inapposite.  *Lapica v. Comm'r of Soc. Sec.*, 501 F. App'x 895, 899 (11th Cir. 2012).

In *Lapica*, the court reached step five of the analysis and the ALJ asked a hypothetical question about whether the claimant could perform any other jobs.  *Id.*  The hypothetical omitted key limitations, including an opinion from an expert that Lapica had the ability to sit for four hours (up to two hours at a time), stand for two hours (up to twenty minutes at a time), and walk for two

23

hours (up to twenty minutes at a time and occasionally with a cane) in an eight-hour day. *Id.* Instead, the ALJ asked the VE to assume that Lapica "needs to sit to rest." *Id.* As the Eleventh Circuit noted, it was unclear that "she needs to sit to rest" has the same meaning as only sitting for four hours, standing for two hours, and walking for two hours. Unlike *Lapica*, it is fairly evident that the ALJ's statement that "[t]hey have to avoid concentrated exposure to wetness and to hazards" means that the VE must consider all hazards, including those involving machinery. Accordingly, and on remand, should the ALJ reach prong two of the step four analysis, the ALJ would not have erred in his application of the RFC by omitting mention of specific hazards in his hypothetical question to the VE.

The Court need not reach Plaintiff's contention as to an alternative step five finding because the undersigned recommends remanding this case in order to address the deficiencies in step four of the analysis.

## V.   RECOMMENDATION

Accordingly, the undersigned respectfully recommends that Plaintiff Norma Virgen Escalona's Motion (ECF No. 27) be **GRANTED** and that Defendant's Motion (ECF No. 30) be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to reanalyze steps four and five of the Social Security Administration's five-step inquiry, including affording proper weight to the opinions of Dr. Turner.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 11th day of August, 2022.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE